FILED

2010 Feb-09  AM 11:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| SANDRA B. MOORE, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No.:  2:09-CV-0084-RDP** |
| | } | |
| MICHAEL J. ASTRUE, Commissioner | } | |
| Social Security Administration, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Sandra B. Moore brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, Disability Income Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed, as it is supported by substantial evidence and proper legal standards were applied.

## I.      Procedural History

Plaintiff filed applications for a period of disability, DIB, and SSI on November 17, 2004[1] alleging an onset date of disability of July 3, 2003. (Tr. 52-61, 159-61). Plaintiff's applications were denied on February 7, 2005. (Tr. 162-63). Plaintiff filed an appeal and a request for a hearing before

---

[1] Plaintiff previously filed applications for benefits in July 2003 and October 2004, alleging a disability onset date of both June 29 and 30, 2003. (Tr. 51-54, 151-53). These applications were subsequently denied and Plaintiff did not pursue these initial claims to the hearing level. (Tr. 30-36, 149-50, 154-58).

an Administrative Law Judge ("ALJ") on March 17, 2005.[2]  (Tr. 40, 62-68).  Plaintiff's case was

heard by ALJ Jack Ostrander on February 6, 2006.  (Tr. 41-47, 168-91).  In his November 6, 2006

decision[3], the ALJ determined that Plaintiff was not eligible for a period of disability, DIB, or SSI

because she failed to meet the disability requirements of the Act and retained the residual functional

capacity ("RFC") to perform a significant range of sedentary work.  (Tr. 14-28).  Plaintiff filed a

request for review and hearing on December 19 and 22, 2006. (Tr. 10-11, 13).  The Appeals Council

denied Plaintiff's request for review and hearing on November 20, 2008.  (Tr. 3-5).  Within the

required time limitations, Plaintiff filed this civil action.

Plaintiff was born on May 5, 1972 and has an eleventh grade education.  (Tr. 52, 173-74).

Plaintiff alleges she has been unable to perform substantial gainful activity and that she became

disabled on July 3, 2003 due to diabetes mellitus with peripheral neuropathy, and blindness and low

vision in her right eye.  (Tr. 52-61, 159-61).

During the hearing, Plaintiff testified that she was diagnosed as a diabetic thirteen years prior,

at which time she was prescribed Humulin 70/30 insulin. (Tr. 175).  In addition to her daily dosages

of insulin, Plaintiff stated that she consumes over-the-counter Advil, Aleve, and Tylenol for pain,

which allegedly results from her diabetic condition. (Tr. 95).

According to her testimony, Plaintiff is significantly affected by her alleged neuropathy,

cellulitis, and uncontrolled blood sugar.  She testified that she checks her blood sugar levels

---

[2]Plaintiff also filed a request for hearing on March 18, 2005.  (Tr. 29).

[3]After carefully reviewing the record, this court has determined that the ALJ incorrectly referred
to October 19, 2004 as the date Plaintiff filed her applications for DIB and SSI payments, which are
the focus of this review.  (Tr. 17).  As noted in footnote one, those applications were denied on
February 11, 2005.  (Tr. 30-36).

approximately six times per day and that they fluctuate between three hundred eighty-seven and four hundred sixty-one. (Tr. 176-78). She also testified that her high blood sugars cause her to become nauseated approximately once a week. (Tr. 185-86). Plaintiff alleges that her lower limbs are afflicted with cellulitis-related sores once or twice a month. (Tr. 185). She explained that she treats such sores by soaking her limbs in Epson salt and applying neosporin. (*Id.*). She stated that she experiences tingling and burning sensations around her ankles and on the bottom of her feet. (Tr. 180). In an attempt to alleviate the severity of these symptoms, Plaintiff testified that she elevates her feet between three and five hours each day. (Tr. 179-80). Plaintiff also testified that her hands are frequently cold, numb, and incapable of holding or gripping objects for extended periods of time. (Tr. 180). During questioning, Plaintiff estimated that she can stand for five to fifteen minutes and lift up to a gallon of tea. (Tr. 181). She approximated her pain level, on a scale of one to ten, to be six or seven. (*Id.*). Plaintiff also testified that she has 20/30 vision in her left eye, 20/200 in her right eye, and that these impairments are the result of diabetic retinopathy. (Tr. 182-83).

Plaintiff further stated that her daily routine consists of taking her two children to school, attending to a limited number of household chores, and preparing dinner. (Tr. 180-81). She revealed that she is on a daily diet of eighteen hundred calories, and indicated that she does not participate in any activities outside her home. (Tr. 187).

In questionnaires completed in December 2004, Plaintiff similarly described the debilitating effects of her diabetic condition and the way in which such effects influence her daily lifestyle. (Tr. 84-89, 90-95). She complained of swelling, numbness, and pain in her lower limbs, all of which prevent her from standing for more than thirty minutes and walking for more than twenty minutes. (Tr. 69, 84). However, Plaintiff indicated that she is able to sit without restriction. (*Id.*). Plaintiff

3

wrote that her ability to sleep soundly and extensively has been compromised by the aforementioned pain.  (Tr. 90).  She stated that, as a result of her lower limb pain, she is unable to stand in the shower, forcing her to take baths.  (Tr. 70, 85).  She wrote that her mother assists her in cooking meals, completing household chores, and lifting various items, and that her father is responsible for the maintenance of her yard.  (Tr. 71-73, 86-88).  Plaintiff further stated that she utilizes wheelchairs or motorized scooters when shopping.  (Tr. 72, 87).  As in her testimony, Plaintiff indicated that she rarely socializes with friends or family and does not participate in any activities outside of the home.  (Tr. 92).

Plaintiff's documented medical history is quite limited, as her visits to doctors and/or medical facilities have been primarily limited to instances of medical emergency.  Furthermore, a number of these instances were only tangentially, if at all, related to the source of her alleged disability.  On July 26, 2003, Plaintiff was treated at Medical Center East ("MCE") for a laceration of the left index finger.  (Tr. 117-24).  She was treated for a laceration of the right index finger at the same hospital on August 29, 2004.  (Tr. 111-16).  An injury to her left ankle led Plaintiff to present herself to the emergency room at MCE on October 2, 2004, at which time her ankle was placed in an air cast.  (Tr. 104-10).

Plaintiff submitted to a consultative evaluation by Dr. Duane Kirksey on January 29, 2005.  Plaintiff reported to Dr. Kirksey that she was diagnosed with diabetes thirteen years prior and is insulin dependent, using twenty-four units of Insulin 70/30 in the morning and twenty-eight units of the same medication at night.  (Tr. 125-26).  She recalled no heart problems, stroke, kidney disease, or high blood pressure.  (Tr. 125).  She indicated that she suffers from peripheral neuropathy and has experienced multiple episodes of diabetic ketoacidosis, both of which arose from her

diabetes. (*Id.*). She estimated that she has had peripheral neuropathy for two years and that feelings of pins and needles are present in both her hands and feet. (*Id.*). Similarly, Plaintiff reported that she feels burning and numbness in her feet. (*Id.*). She stated that she has been blind in the right eye since the second grade. (*Id.*).

In the course of Plaintiff's evaluation, Dr. Kirksey observed that Plaintiff showed no signs of distress, exhibiting good effort and cooperating throughout the exam. (Tr. 126). Dr. Kirksey measured Plaintiff's vision, with lenses, as 20/30 in the left eye and 20/200 in the right eye. (*Id.*). Dr. Kirksey noted that Plaintiff was able to tiptoe, heal, and tandem walk without difficulty and possessed a normal, narrow-based gait. (*Id.*). Additionally, Plaintiff had a positive Romberg. (*Id.*). She displayed a normal range of motion in the cervical spine, lumbar spine, ankle joints, shoulder joints, elbow joints, and wrist joints. (Tr. 127). Dr. Kirksey noted Plaintiff's motor and muscle strength as 5/5 throughout. (*Id.*). However, Plaintiff did exhibit slightly decreased range of motion in the hips and bilateral knees, the latter of which Dr. Kirksey attributed to mild crepitus. (*Id.*). She also showed signs of decreased pinprick sensation and position sensations on her lower legs and forearms. (*Id.*). Dr. Kirksey diagnosed Plaintiff with diabetes mellitus Type I complicated by peripheral neuropathy, and legal blindness of the right eye. (*Id.*).

Dr. Kirksey concluded that, as a result of her peripheral neuropathy and positive Romberg, Plaintiff would only be able to stand/walk for two hours in an eight-hour day. (Tr. 127). He noted that she would have difficulty walking for an extended period of time, but would not require an assistive device. (Tr. 128). Dr. Kirksey asserted that Plaintiff could sit for an unrestricted number of hours in an eight-hour day and, that likewise, she could lift and carry an unrestricted amount of weight both frequently and occasionally. (*Id.*). Although Dr. Kirksey concluded that Plaintiff has

significant manipulative, visual, and environmental limitations, he noted that she has no postural limitations. (*Id.*).

Plaintiff was admitted to the UAB Hospital Emergency Room on September 19, 2005 with diabetic ketoacidosis ("DKA") and cellulitis in the right leg. (Tr. 130). Past medical history positively revealed that Plaintiff suffered from insulin-dependent diabetes mellitus and had experienced two previous episodes of DKA. (*Id.*). Plaintiff was found to have blood glucose of 309 and ketonuria. (*Id.*). She stated she had not administered insulin to herself for the past three months due to economic reasons. (*Id.*). Plaintiff noted that she smoked approximately one pack of cigarettes per day. (*Id.*). She responded well to the administration of an insulin drip and antibiotics and was discharged on September 25, 2005. (Tr. 131).

## II.    ALJ Decision

Determination of disability under the Social Security Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed

6

in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform [her] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).   Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that the Plaintiff has not engaged in substantial gainful activity since her alleged June 30, 2003 onset date of disability.[4]  (Tr. 27).  The ALJ determined that Plaintiff has severe impairments of insulin dependent diabetes mellitus, blindness and low vision in her right eye, and cellulitis.  Although the ALJ found Plaintiff's impairments to be severe, he determined that her impairments fail to meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1.  (*Id.*).  According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their impact on her ability to work are not entirely credible due to the discrepancies between her assertions and information contained in the documentary reports, the reports of the treating and examining practitioners, and the medical history.  (Tr. 23).  The ALJ determined that Plaintiff retains the RFC to perform limited sedentary work; however, her capacity for the full range of sedentary work is diminished by significant non-exertional limitations.  (Tr. 26-27).  The ALJ found that Plaintiff could not perform any of her past relevant work.  (*Id.*).

---

[4]There is an inconsequential discrepancy in the record concerning the date of the onset of disability, as it is alternately listed as June 30, 2003 or July 3, 2003.

The ALJ called a vocational expert ("VE") to testify who was present throughout the hearing and familiar with Plaintiff's background. (Tr. 188-91). The VE testified that an individual with Plaintiff's limitations could perform jobs which existed in significant numbers in the regional and national economies. (Tr. 190-91). Based on the VE's testimony, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing and that Plaintiff was not under a disability at any time through the date of the decision. (Tr. 27-28).

## III.   Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. #10 at 1). Plaintiff asserts that there are two reasons why this court should grant the relief sought: 1) the ALJ's decision is not supported by substantial evidence, and 2) the ALJ improperly applied legal standards in the course of his review.

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision

is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.    Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal.  For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.    The ALJ Properly Considered Plaintiff's Manipulative Limitations in Finding That Plaintiff Could Perform Sedentary Work

Plaintiff's argues that the ALJ did not consider her manipulative limitations in determining that she was capable of performing sedentary work.  (Doc. #10 at 5).  Plaintiff testified that she struggles to grip and hold objects because of numbness and coldness in her hands.  (Tr. 180). She also testified that she had uncontrollable diabetes and that her diabetic condition has precipitated the onset of cellulitis, which causes pain and swelling in her feet, symptoms which she attempts to alleviate by elevating her feet three to five hours a day.  (Tr. 176-79).  Plaintiff further testified that she experiences tingling and burning sensations in her feet and ankles.  (Tr. 180, 183-84).

In his consultative examination on January 29, 2005, Dr. Kirksey diagnosed Plaintiff with diabetes mellitus Type I complicated by peripheral neuropathy and legal blindness in the right eye. (Tr. 127). Taking into consideration the above diagnosis and Plaintiff's subjective complaints, Dr. Kirksey determined that Plaintiff could sit for unlimited periods of time, lift or carry unlimited weight both occasionally and frequently, and displayed no postural limitations. (Tr. 128). Dr. Kirksey held that Plaintiff could walk and stand for two hours in an eight-hour day, but would struggle to walk for extended periods of time. (Tr. 127-28). Dr. Kirksey also held that, in light of Plaintiff's decreased sensation of feeling and fingering, she would have significant manipulative limitations, but, notably, did not elaborate on the extent of these limitations. (*Id.*). Dr. Kirksey further concluded that Plaintiff has visual and environmental limitations. (Tr. 128).

In his decision, the ALJ gave considerable weight to Dr. Kirksey's conclusions, going so far as to note the aforementioned manipulative limitations. (Tr. 21). The ALJ also accurately characterized Plaintiff's medically-established limitations in his hypothetical questions to the Vocational Expert ("VE") who testified during the hearing. (Tr. 190). The VE testified that, despite Plaintiff's manipulative, visual, and environmental limitations, she would be able to perform sedentary work. (*Id.*).

Although the ALJ considered Plaintiff's limited treatment record, non-compliance, and daily activities, Plaintiff's manipulative limitations, or lack thereof, were central to his judgment concerning her ability to perform sedentary work and, thus, the status of her supposed disability. Therefore, her argument to the contrary is off the mark.

10

**B.      The ALJ Accurately Judged Plaintiff's Non-Compliance**

Plaintiff argues that the ALJ's denial of disability is largely based on Plaintiff's non-compliance with treatment.  Plaintiff acknowledges that "while a remediable or controllable medical condition is generally not disabling" she argues that her non-compliance is linked with her inability to afford treatment.  (Doc. #10 at 6, 7).  Plaintiff asserts that her inability to afford treatment renders her non-compliance moot.  (*Id.*).

Although Plaintiff's non-compliance factored into the ALJ's decision (Tr. 24-25), it is inaccurate to characterize her non-compliance as the "foundation" of the ALJ's denial.  (Doc #10 at 6).  Indeed, in determining that Plaintiff was not disabled, the ALJ appropriately considered all aspects of the claim, including the documentary record and subjective complaints.  (Tr. 25).  Furthermore, the ALJ properly weighed Plaintiff's financial ability to afford treatment, broaching the subject in a series of questions at the hearing.  (Tr. 186).  Although Plaintiff testified that she is unable to afford the ten dollar co-pay that is required for treatment at Cooper Green Hospital, she also testified that she receives money for gas from her father, in the amount of five to ten dollars per week, and noted while at UAB in 2005, that she smokes a pack of cigarettes per day.  (Tr. 130, 186).  Plaintiff's assertion that she is unable to afford treatment is seriously compromised by the apparent discrepancy between her spending habits and her reported poverty.  In *Sias vs. Secretary of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988), a case which closely resembles the present one, the Sixth Circuit questioned the credibility of a claim of disability due to thrombosis because the claimant, who asserted that he was unable to afford support hose, smoked two packs of cigarettes per day.  The court asserted, "[t]aking judicial notice of the monetary costs of this dangerous habit, we calculate that the cost of the hose could have been covered by the savings the claimant would

realize if he gave up cigarettes." Similarly, were Plaintiff to give up smoking, she would be able to apply subsequent savings to an expanded regimen of medical treatment. Thus, the court rejects Plaintiff's second argument as well.

## VI.    Conclusion

For reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ____9th____ day of February, 2010.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

12